**Record No. 13-2466**

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

**FOR THE FOURTH CIRCUIT**

---

## PATRICIA JOLLY,

ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,

*Plaintiff - Appellant,*

v.

## SUNSHINE FINANCIAL GROUP, LLC;
## LAW OFFICE OF J. SCOTT MORSE, LLC,
D/B/A THE DEBT RECOVERY LAW CENTER,

*Defendants - Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

---

### OPENING BRIEF OF APPELLANT

---

E. David Hoskins
Max F. Brauer
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 E. Lombard Street, Suite 400
Baltimore, MD 21202
(410) 662-6500
davidhoskins@hoskinslaw.com
maxbrauer@hoskinslaw.com

*Counsel for Appellant Patricia Jolly*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-2466__        Caption: __Patricia Jolly, et al. v. Sunshine Financial Group, LLC, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Patricia Jolly, on behalf of herself and other similarly situated__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                        ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐ YES ☑ NO
     If yes, identify all such owners:

10/28/2013 SCC                          - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _E. Daul Houd_____    Date: ___December 11, 2013___

Counsel for: _Appellant_____

## CERTIFICATE OF SERVICE
***************************

I certify that on _December 11, 2013_ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Melissa E. Goldmeier, Esquire
Eccleston & Wolf, PC
Baltimore Washington Law Center
4th Floor
7240 Parkway Drive
Hanover, Maryland 21076

_E. Daul Houd_____             ___December 11, 2013___
      (signature)                              (date)

- 2 -

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE

JURISDICTIONAL STATEMENT ..........................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................................1

STATEMENT OF THE CASE................................................................................2

SUMMARY OF ARGUMENT ...............................................................................6

ARGUMENT .........................................................................................................10

   A. STANDARD OF REVIEW ..........................................................................10

   B. DISCUSSION OF ISSUES ..........................................................................11

     1.   THE <u>BAKER</u> SETTLEMENT AGREEMENT DID NOT
        RELEASE DEFENDANTS FROM LIABILITY FOR
        ENGAGING IN SUBSEQUENT ILLEGAL DEBT
        COLLECTION ACTIVITIES AFTER THE EFFECTIVE
        <u>DATE OF THE SETTLEMENT</u> ........................................................11

     2.   IF THE <u>BAKER</u> SETTLEMENT AGREEMENT IS
        INTERPRETED TO PROHIBIT FUTURE CLAIMS, IT
        VIOLATES PUBLIC POLICY TO THE EXTENT THAT
        IT PROHIBITS FUTURE ATTACKS ON NULL AND
        <u>VOID LAWSUITS AND JUDGMENTS</u>…......................................17

     3.   PLAINTIFF HAS ALSO STATED A CLAIM BASED
        UPON DEFENDANTS' VIOLATION OF THE <u>BAKER</u>
        <u>SETTLEMENT AGREEMENT</u>. ......................................................21

CONCLUSION ......................................................................................................29

REQUEST FOR ORAL ARGUMENT .................................................................30

CERTIFICATE OF COMPLIANCE.....................................................................31

i

CERTIFICATE OF SERVICE ...................................................................32

ADDENDUM ........................................................................................33

# TABLE OF AUTHORITIES

## CASES

Anyanwutaku v. Fleet  Mortg. Group, Inc.,
  85 F. Supp. 2d 566 (D. Md. 2000)............................................................11, 12

Baker, et al. v. Sunshine Financial Group, LLC, et al.,
  Case No. 1:11-cv-02028-PWG.................................................................*passim*

Corsair Special Situations Fund, L.P. v. Engineered Framing System, Inc.,
  694 F. Supp. 2d 449 (D. Md. 2010).................................................................21

Estate of Cowart v. Nicklos Drilling Co.,
  505 U.S. 469 (1992)........................................................................................27

Dowling v. Litton Loan Serv., L.P.,
  No. 2:05-CV-0098, 2006 WL 3498292 (S.D. Ohio Dec. 1, 2006) .................27

Finch v. LVNV Funding, LLC, 212 Md. App. 748, 71 A.3d 193 (Md. Ct.
  Spec. App. 2012), cert denied, 435 Md. 266, 77 A.3d 1084
  (Md. 2013) .............................................................................................*passim*

Goldberg v. Goldberg,
  290 Md. 204, 428 A.2d 469 (Md. 1981).........................................................21

Hesse v. Sprint Corp.,
  598 F.3d 581 (9th Cir. 2010) ..........................................................................11

Jacobs v. Venali,
  596 F. Supp. 2d 906 (D. Md. 2009).................................................................12

Laughlin v. Metropolitan Washington Airports Authority,
  149 F.3d 253 (4th Cir. 1998) ..........................................................................10

LVNV Funding, LLC v. Trice,
  352 Ill.Dec. 6, 11, 952 N.E.2d 1232 (Ill. App. 2011)......................................17

Marburg v. Merchantile Bldg. Co.,
  154 Md. 438, 140 A. 836 (Md. 1928).............................................................17

Maryland-National Park and Planning Commission v. Washington
    National Arena,
    282 Md. 588, 386 A.2d 1216 (Md. 1978)........................................................19

National City Bank of IN v. Turnbaugh,
    463 F.3d 325 (4th Cir. 2006) ...........................................................................10

Neild v. Wolpoff & Abramson, L.L.P.,
    453 F. Supp. 2d 918 (E.D. Va. 2006) ..............................................................28

Pacheco v. Joseph McMahon Corp.,
    No. 3:10CV464 AWT, 2012 WL 774943 (D. Conn. Mar. 7, 2012) ...............27

Post v. Bregman,
    349 Md. 142, 707 A.2d 806 (Md. 1998)..........................................................17

Roach v. Angelone,
    176 F.3d 210 (4th Cir. 1999) ...........................................................................20

Slice v. Carozza Prop., Inc.,
    215 Md. 357, 137 A.2d 687 (Md. 1958)....................................................21, 26

Spriggs v. Diamond Automobile Glass,
    242 F.3d 179 (4th Cir. 2001) ...........................................................................10

Springlake Corp v. Symmarron Ltd. Partnership,
    81 Md. App. 694, 569 A.2d 715 (Md. 1990)...................................................18

State Farm Mut. v. Nationwide Mut.,
    307 Md. 631, 516 A.2d 586 (Md. 1986)..........................................................17

Stiff v. Wilshire Credit Corp.,
    No. CIV05-00462PCTMEA, 2006 WL 141610 (D. Ariz. Jan. 17,
    2006) ................................................................................................................27

Sunga v. Broome,
    1 2010 WL 3198925 (E.D. Va. Aug. 12, 2010) ..............................................28

Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.,
    396 F.3d 96 (2d. Cir. 2005) .............................................................................11

iv

Walsh v. Hibberd,
    122 Md. 168, 89 A. 396 (Md. 1913)................................................................17

Wells v. Liddy,
    186 F.3d 505 (4th Cir. 1999) ......................................................................10

Wright v. Angelone,
    151 F.3d 151 (4th Cir. 1998) ......................................................................20

## STATUTES

15 U.S.C. § 1692 et seq................................................................................1
15 U.S.C. § 1692e(2)(A).................................................................19, 26, 29
15 U.S.C. § 1692e(5) .................................................................................29
15 U.S.C. § 1692e(10) ...............................................................................29
15 U.S.C. § 1692f(1)...................................................................................29
15 U.S.C. § 1693, et seq...............................................................................1
28 U.S.C. § 1291 .....................................................................................1, 3
28 U.S.C. § 1331 ........................................................................................1

Md. Code Ann., Com. Law § 13-101 et seq ...............................................1
Md. Code Ann., Com. Law § 14-201 et seq ...............................................1
Md. Code Ann., Com. Law § 14-202(8)........................................8, 19, 29

Md. Code Business Regulation § 7-205(c)(4) .............................................9
Md. Code Business Regulation § 7-401(b) .................................................9

## RULES

Fed. R. Civ. Proc. 56(c) ...........................................................................10

## OTHER AUTHORITIES

Identifying Independent and Dependent Clauses, PURDUE ONLINE WRITING LAB,
http://owl.english.purdue.edu/owl/resource/598/01/
(last visited October 15, 2013)...................................................................22

v

Making Subjects and Verbs Agree, PURDUE ONLINE WRITING LAB,
http://owl.english.purdue.edu/owl/resource/598/01/
(last visited October 15, 2013)..................................................................23

Restatement (Second) of Judgments § 24(2) (1982)) ..............................................12

## JURISDICTIONAL STATEMENT

This appeal is taken from an order issued by the Honorable J. Frederick Motz of the District of Maryland. The Amended Class Action Complaint filed by Ms. Jolly alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 et seq., and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-101 et seq. The basis for the District Court's subject matter jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1693, et seq.

The basis for appellate jurisdiction is 28 U.S.C. § 1291. A final appealable order was issued on November 21, 2013. JA 119. Plaintiff filed a timely Notice of Appeal on December 3, 2013. JA 120.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did a debt collector violate the FDCPA, MCDCA and MCPA when the consumer previously released only prior claims as part of a class action settlement but not future claims arising out of attempts to collect on null and void lawsuits and judgments?

2.    Is a portion of a prior class action settlement agreement that permits the collection of judgments that are later deemed to be void unenforceable as against public policy?

1

3.      Did a debt collector violate the FDCPA, MCDCA and MCPA when it failed to apply a credit to the "unpaid amount" of a consumer's account and instead collected on an inflated amount?

## STATEMENT OF THE CASE

Patricia Jolly is a consumer who was scammed into a usurious, 98.97 percent interest internet payday loan provided by Cash Call. JA 11 at ¶ 22. She was unable to pay this illegal loan and it was subsequently purchased by Defendant Sunshine Financial Group, LLC ("Sunshine"), an entity that illegally operated as a debt collector because it did not hold a Maryland collection agency license as required by the Maryland Collection Agency Licensing Act ("MCALA"). JA 11-12 at ¶¶ 23, 27-28.

Sunshine collects on consumer debts in the State of Maryland. JA 12 at ¶ 26. The consumer debts purchased by Sunshine are debts that are in default or Sunshine is the servicer of these debts acquired after default. Id. In many instances, including this case, the debts sought to be collected by Sunshine were no longer legally enforceable obligations. Id. Nonetheless, Sunshine hired Defendant Law Office of J. Scott Morse, LLC ("Morse") to bring collection actions against the Plaintiff Patricia Jolly ("Ms. Jolly") and the Class she seeks to represent during the time when Sunshine was unlicensed. JA 12 at ¶¶ 27-28.

On December 21, 2010, Morse brought suit against Ms. Jolly on behalf of

2

Sunshine in the District Court of Maryland to collect a $2,392.99 consumer debt Sunshine had purchased after default. JA 12 at ¶ 27. By filing this lawsuit, Sunshine acted as a "collection agency" as defined by MCALA, but since it was not licensed as a collection agency it was not permitted to file this lawsuit. JA 12 at ¶ 28.

Like many unsophisticated consumers, Ms. Jolly did not realize that the lawsuit filed against her by Sunshine and Morse was illegal due to Sunshine's failure to hold a Maryland collection agency license. Id. For this reason she entered into a Rule 3-506(b) settlement agreement with Sunshine on May 3, 2011. JA 12-13 at ¶ 29. The terms of this agreement were that Sunshine's case against Ms. Jolly would be dismissed without prejudice as long as Ms. Jolly made monthly payments to Sunshine. Id. However, if she failed to pay as agreed, she consented to a judgment in Sunshine's favor in the amount of $3,117.90 less a credit for any payments made before the breach. Id.

As a diligent consumer, Ms. Jolly made monthly payments pursuant to this settlement agreement until she discovered that the lawsuit brought against her by Sunshine and Morse was illegal. JA 13 at ¶ 30. She learned this when she was notified that she was a member of a class action against Sunshine and Morse in the case of Baker, et al. v. Sunshine Financial Group, LLC, et al., Case No. 1:11-cv-02028-PWG. Id. After final approval of the Baker class, Sunshine and Morse

3

obtained a judgment against Ms. Jolly. JA 14 at ¶ 34.

In a reported opinion, the Maryland Court of Special Appeals ruled that the lawsuits filed and judgments obtained in lawsuits that were initiated by an unlicensed collection agency are null, void and unenforceable. Finch v. LVNV Funding, LLC, 212 Md. App. 748, 761, 71 A.3d 193, 200 (Md. Ct. Spec. App. 2012), cert denied, 435 Md. 266, 77 A.3d 1084 (Md. 2013). Under this clear legal authority, it is beyond dispute that the lawsuit filed against Ms. Jolly is a nullity, as is her Rule 3-506(b) settlement agreement, and the judgment Sunshine obtained against her is void and unenforceable. JA 13-14 at ¶ 33. Because of Finch, the Baker settlement notwithstanding, the Defendants no longer had the right to continue to pursue collections on lawsuits filed and settlement agreements and judgments obtained when Sunshine was unlicensed. Defendants did so anyway.

In addition to continuing to illegally collect on these void judgments, Sunshine and Morse refused to give Ms. Jolly and the class she seeks to represent the relief they were entitled to under Baker. JA 8 at ¶¶ 7-9. Under the Baker Settlement Agreement, Ms. Jolly was a member of Sub-Class II(a) and the unpaid amount on her account was to receive a credit of 10 percent of the Original Principal on the books of Sunshine. JA 13 at ¶ 32. Nevertheless, on November 6, 2012, subsequent to the October 26, 2012, Final Approval Date of the Baker class, Sunshine and Morse entered a judgment against Ms. Jolly in the amount of

$2,517.90. JA 14 at ¶ 34. Ms. Jolly was never given her 10 percent credit of the Original Principal pursuant to the <u>Baker</u> settlement. JA 14 at ¶ 35. The judgment illegally entered by Sunshine and Morse against Ms. Jolly of $2,517.00 accounted for $3,117.90 minus $600.00 in payments she had previously made, but did not include her 10 percent credit. <u>Id</u>.

Ms. Jolly filed her original class action complaint on July 24, 2013, and an amended class action complaint on September 24, 2013. JA 2-3, 6-27. Each Defendant filed a motion to dismiss or in the alternative for summary judgment. JA 28-111; 112-114. Ms. Jolly brought her lawsuit because subsequent to the <u>Baker</u> settlement Sunshine and Morse engaged in further illegal collection activity outside the scope of that settlement agreement by having a void judgment entered against Ms. Jolly and other consumers and collecting on these void judgments. JA 8 at ¶ 8. Sunshine and Morse also served interrogatories in aid of enforcement of judgment and attempted to garnish the assets of Ms. Jolly. JA 14 at ¶ 36.

Sunshine and Morse thus engaged in a new round of illegal conduct after <u>Baker</u> which included (1) entering a judgment against Ms. Jolly that, pursuant to <u>Finch</u>, was void as a matter of law, (2) then attempting to enforce the void judgment and collect funds from Ms. Jolly, and (3) attempting to collect an inflated amount from Ms. Jolly that did not give Ms. Jolly the benefit of the <u>Baker</u> agreement. JA 14 at ¶ 37.

5

Sunshine and Morse filed 563 debt collection lawsuits in Maryland that are now null and void because they were filed when Sunshine was not properly licensed. JA 15 at ¶ 39. As of the date the original complaint was filed in this case, judgments had been entered in favor of Sunshine in 157 of these debt collection lawsuits. JA 15 at ¶ 40. There is no dispute that these judgments are void as the result of Finch. The fact that the class members in Baker entered into an agreement not to attack judgments previously obtained by Defendants does not change the fact that the judgments are void. Sunshine and Morse have failed to dismiss or otherwise mark as satisfied these judgments, but instead have undertaken additional collection activity since the date of final approval of the Baker settlement. Id. Because this collection activity constituted new illegal debt collecting it was outside the scope of the release provided by the Baker settlement.

On November 21, 2013, the District Court issued its order treating the Defendants' motions as motions for summary judgment, granted the motions and entered judgment against Ms. Jolly. JA 119.

Ms. Jolly filed a timely notice of appeal on December 3, 2013. JA 120-121.

## SUMMARY OF ARGUMENT

Defendants entered into a prior class action settlement pursuant to which certain claims were released in exchange for settlement consideration. This agreement became effective on October 26, 2012, and released any claims that

6

existed up to that point, "including but not limited to an attack on any judgments obtained by Sunshine." At the time this settlement agreement was entered no Maryland appellate court had ruled on the issue of the effect to be given to judgments entered in lawsuits that were filed by an entity that did not maintain a collection agency license as required by MCALA.

After the <u>Baker</u> settlement agreement became effective, the Defendants began their collection activities anew and among other things entered a judgment against Ms. Jolly on November 6, 2012, and then attempted to garnish her assets on February 9, 2013, and demanded payment in a letter dated April 1, 2013.

Then, on June 28, 2013, the Maryland Court of Special Appeals addressed the issue and ruled that under Maryland law, "a complaint filed by an unregistered collection agency is [ ] a nullity, and any judgment entered on such a complaint is void." <u>Finch v. LVNV Funding, LLC</u>, 212 Md. App. 748, 761, 71 A.3d 193, 200 (Md. Ct. Spec. App. 2012), <u>cert.</u> <u>denied</u>, 435 Md. 266, 77 A.3d 1084 (Md. 2013). Thus, all of the lawsuits filed by Defendants while Sunshine was an unregistered collection agency were considered a nullity and the judgments obtained in those lawsuits became void.

This lawsuit was filed approximately one month after <u>Finch</u> was decided and is focused exclusively on the collection activity that took place after the effective date of the <u>Baker</u> settlement. The lawsuit seeks damages under the FDCPA,

7

MCDCA and MCPA based upon the collection activities not covered by <u>Baker</u>, based on the fact that Defendants have continued post-<u>Baker</u> to collect on judgments that have been deemed void by the Maryland Court of Special Appeals and in doing so have violated, among other provisions, 15 U.S.C. § 1692e(2)(A) by making a false representation of the character, amount, or legal status of the alleged debt and MCDCA § 14-202(8) by attempting to enforce a right with knowledge that the right does not exist.

The District Court first erred in holding that Ms. Jolly released the claims asserted in her lawsuit because she was a member of the class covered by the <u>Baker</u> Settlement Agreement. The illegal debt collection activity complained of by Ms. Jolly occurred after final approval of the <u>Baker</u> Settlement Agreement when the Defendants decided to continue collection activity on lawsuits and judgments that were declared null and void as the result of <u>Finch</u>. These claims arising out of such subsequent collection attempts did not exist at the time of the <u>Baker</u> Settlement, and thus could not have been released because they were different, later transactions and factual predicates.

Moreover, the <u>Baker</u> Settlement Agreement itself is written in the past and present tense, releasing only claims that "were asserted" or "could have been asserted." The District Court erred in explicitly changing the verb tense of the Settlement Agreement to the future tense, and the Court cannot explicitly change

the agreement's language to reach the result it wants. The District Court erred because it did not apply the plain meaning of the <u>Baker</u> Settlement Agreement, which did not include a release of future claims.

If the Court were to erroneously read future claims into the <u>Baker</u> Settlement Agreement, it would make the release void for public policy reasons. In enacting MCALA, the Maryland legislature created a statutory regime to protect the welfare of its citizens by imposing civil penalties on unlicensed collection agencies based on "the deleterious effect of the violation on the public and the collection industry," MCALA § 7-205(c)(4), and also imposing criminal penalties, MCALA § 7-401(b). The licensure legislation was aimed at eliminating a perceived harm rather than building the public fisc. Thus, <u>Finch</u> found that operating as an unlicensed collection agency was so offensive to the public good that it justified deeming its judgments void. By the same rationale, the <u>Baker</u> Settlement Agreement offends public policy to the extent that it is interpreted as a bargain by which the Defendants contracted with least sophisticated consumers to collect on judgments that would later be deemed to be void. The law under <u>Finch</u> is that Ms. Jolly's judgment is void due to public policy considerations, and any attempt to use a settlement agreement to effectively resurrect judgments that are void would itself violate clear public policy.

Finally, the District Court erred in finding that Ms. Jolly's unpaid balance was not entitled to a 10 percent credit of her original principal. The <u>Baker</u> settlement explicitly provided that Ms. Jolly was entitled to such relief, which was never provided by Defendants. The District Court failed to apply English grammar rules, which dictate that this credit would be applied to the "unpaid amount" on Ms. Jolly's account. Instead the District Court's strained reading eliminated any relief to Ms. Jolly and other <u>Baker</u> class members similarly situated.

## <u>ARGUMENT</u>

### A.    <u>STANDARD OF REVIEW</u>

Ms. Jolly appeals an order granting a motion that the District Court treated as a motion for summary judgment in favor of Defendant. The standard of appellate review is de novo, "viewing the facts in the light most favorable" to the Plaintiff. <u>Wells v. Liddy</u>, 186 F.3d 505, 520 (4th Cir. 1999) (citing <u>Laughlin v. Metropolitan Washington Airports Authority</u>, 149 F.3d 253, 258 (4th Cir. 1998). <u>See also</u> <u>National City Bank of IN v. Turnbaugh</u>, 463 F.3d 325, 329 (4th Cir. 2006); <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001). "A moving party is entitled to summary judgment if the evidence shows that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." <u>Turnbaugh</u>, 463 F.3d at 329 (citing Fed. R. Civ. Proc. 56(c)).

**B.    DISCUSSION OF ISSUES**

    **1.    THE <u>BAKER</u> SETTLEMENT AGREEMENT DID NOT RELEASE DEFENDANTS FROM LIABILITY FOR ENGAGING IN SUBSEQUENT ILLEGAL DEBT COLLECTION ACTIVITIES AFTER THE EFFECTIVE DATE OF THE SETTLEMENT.**

The District Court erred in holding that Ms. Jolly previously settled her claims by participating in the <u>Baker</u> class action settlement because Ms. Jolly's claims did not exist at the time of the <u>Baker</u> settlement. Rather, Defendant's illegal debt collection took place subsequent to the effective date of the <u>Baker</u> settlement. The District Court erred because Ms. Jolly could not have waived future claims against Defendants arising out of illegal debt collection as indicated by the plain language of the <u>Baker</u> release. The plain language of the <u>Baker</u> release only included conduct that occurred <u>prior to</u> final approval of the <u>Baker</u> settlement.

A plaintiff who settles a claim against a defendant generally is not barred from later bringing another suit against that same defendant for illegal conduct subsequent to the release. Numerous courts have held that class action releases only bar subsequent suits that have an "identical factual predicate" as the released claims. <u>See</u>, <u>e.g.</u>, <u>Wal-Mart Stores, Inc. v. VISA U.S.A., Inc.</u>, 396 F.3d 96, 106 (2d. Cir. 2005); <u>Hesse v. Sprint Corp.</u>, 598 F.3d 581, 590 (9th Cir. 2010). Similarly, under the doctrine of res judicata, the cause of action presented must be "identical to the one determined in the prior adjudication." <u>Anyanwutaku v. Fleet</u>

11

Mortg. Group, Inc., 85 F.Supp.2d 566, 570 (D. Md. 2000). With respect to this element, Maryland state courts as well as federal courts have adopted the "transaction test" to determine the identity of the causes of action. Id. at 571. Under this test, the court determines whether claims arise out of the same transaction or series of transactions based on factors such as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Id. (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982)). For the purposes of the instant case, the key inquiry under both the doctrine of release and the doctrine of res judicata is whether the facts that give rise to Ms. Jolly's Amended Complaint could have been litigated in the first suit. See Jacobs v. Venali, 596 F. Supp.2d 906, 912-13 (D. Md. 2009).

Here, Defendants' illegal debt collection could not have been litigated in the first suit because the illegal debt collection complained of did not occur until after the Baker settlement became effective. Final approval in Baker occurred on October 26, 2012. It was after this date that Defendants failed to dismiss any pending lawsuits and vacate any judgments obtained when Sunshine was unlicensed, and instead decided to engage in debt collection through further litigation on lawsuits that are now a nullity and judgments that are now void under the controlling Maryland authority. Specifically, Defendants moved to enroll a

12

consent judgment against Ms. Jolly on November 6, 2012, pursuant to the Rule 3-506(b) settlement reached on the lawsuit that was a nullity. Defendants then engaged in further collection activity on the void judgment including attempting to garnish her assets on February 9, 2013, and demanding payment in a letter dated April 1, 2013, and serving interrogatories in aid of enforcement on the same day. Nothing in the Baker agreement released potential future claims that have resulted because Defendants continue to collect on judgments that have now been deemed to be void as a result of Finch.[1]

Finch held explicitly that this post-Baker settlement activity was not permitted because lawsuits filed by unlicensed entities are dead on arrival: "A complaint filed by an unregistered collection agency is [ ] a nullity, and any judgment entered on such a complaint is void." Finch v. LVNV Funding, LLC, 212 Md. App. 748, 761, 71 A.3d 193, 200 (Md. Ct. Spec. App. 2012), cert denied, 435 Md. 266, 77 A.3d 1084 (Md. 2013). Thus, if an unlicensed debt collector files a lawsuit, but then later obtains a license before final judgment, it must dismiss its lawsuit and refile because the initial complaint itself is a nullity. For this reason, the District Court below clearly erred in basing its ruling on the fact that Sunshine had entered the consent judgment after it finally decided to comply with Maryland law and obtain the required license. JA 116-17. As Finch makes clear, however,

---

[1] Nor could it. See Section 2, infra.

this judgment is void because it arises from a lawsuit that was filed when Sunshine was unlicensed.

Obtaining a debt collection license halfway through the litigation process does not cure the nullity. To hold otherwise would encourage unscrupulous debt collectors to get a head start and jump the gun by filing complaints and only obtaining a license once they were caught red-handed. Such a holding is contrary to Finch. Finch starts from the general principle that "a party that lacks a required license may not file an action in a Maryland court to enforce rights related to its unlicensed activities." Id. at 756-57, 197-98. Such licensure affects the entity's "status as a claimant." Id. at 198, 757; 201, 762. In fact, the licensure requirement "is intended to eliminate a perceived harm, rather than to 'build the public fisc,'" and "imposes criminal penalties for collection agencies that engage in collection activities without a license." Id. at 762-63, 200-01. Thus, the Court held that "[a] complaint filed by an unregistered collection agency is [ ] a nullity, and any judgment entered on such a complaint is void." Id. at 761, 200. [2]

Thus, as made clear by Finch, Defendants were not permitted to continue collections on the lawsuits that were a nullity because they had been filed prior to the date Sunshine had obtained the required license. As a result, any subsequent

---

[2] As this quote makes clear, the District Court erred in interpreting Finch as "limit[ing] its holding to situations where a judgment is entered in favor of an unlicensed debt collector." JA 116-17.

judgments entered, including the consent judgment against Ms. Jolly, are void and unenforceable. The instant lawsuit arises out of the conduct of the Defendants — after the effective date of the <u>Baker</u> settlement — to continue to enforce judgments that became void as a matter of law after the <u>Finch</u> decision was issued. In other words, because of <u>Finch</u>, Defendants' collection activity after the effective date of the <u>Baker</u> settlement was illegal because Defendants had no legal right to collect on void judgments.

Moreover, the plain language of the <u>Baker</u> agreement makes clear that such future collection activity was not within the scope of the release. The release uses only past and present tense verbs. Future tense is never used. Claims released are those that "were asserted" or "could have been asserted." JA 63. Under the class definition these claims would have to relate to the collection activity that occurred during the time period from July 23, 2008, through October 16, 2011. The release did not include those claims that "may be asserted in the future," or "might later be asserted" and does not reference collection activity occurring in the future.

The reference to "judgments obtained" is also past tense. Class members did not release claims relating to "judgments to be obtained" or "judgments that may be obtained later" or "judgments that might be obtained in the future" or "future judgments" or "future claims." The reference to "judgments obtained" dealt only with judgments that were already entered as of the effective date of the settlement.

15

Furthermore, the release is only applicable to Defendants "and their past or present insurers, reinsurers, officers, directors . . . [etc.]" Surely if the release were to include future conduct, it would have included a release of "past, present and future" and not just "past or present." Thus, the language of the <u>Baker</u> Settlement Agreement is clear that it does not release future claims related to future illegal debt collection conduct committed by Defendants.

The District Court erred by interpreting the <u>Baker</u> Settlement Agreement as including future claims. In fact, the District Court's opinion explicitly changed the verb tense in quoting the <u>Baker</u> Settlement Agreement. The Court noted that "Jolly's present claim '<u>relate[s]</u> to whether or not . . . [Sunshine] was required to have a collection agency license under Maryland law' and is 'an attack on . . . [a] <u>judgment [ ]</u>.'" JA at 116 (emphasis added). The <u>Baker</u> Settlement Agreement actually releases "claims <u>related</u> to whether or not Defendant Sunshine was required to have a collection agency license under Maryland law, including but not limited to an attack on any <u>judgments obtained</u>." JA 63. The District Court cannot through creative editing change the text of the release to include future claims, especially when the release explicitly is limited to claims "that were asserted or could have been asserted." <u>Id</u>.

Thus, Ms. Jolly based her Amended Complaint on future facts and conduct that could not have been and were not addressed in the <u>Baker</u> class action

16

settlement. Because the Amended Complaint lacks an identical factual predicate and is not identical to the one in <u>Baker</u>, the District Court erred because Defendants' res judicata and release theories are without merit.

> **2. IF THE <u>BAKER</u> SETTLEMENT AGREEMENT IS INTERPRETED TO PROHIBIT FUTURE CLAIMS, IT VIOLATES PUBLIC POLICY TO THE EXTENT THAT IT PROHIBITS FUTURE ATTACKS ON NULL AND <u>VOID LAWSUITS AND JUDGMENTS.</u>**

"It is established in Maryland that a contractual provision that is in violation of public policy, to the extent of the conflict, is invalid and unenforceable." <u>Post v. Bregman</u>, 349 Md. 142, 161, 707 A.2d 806, 815 (Md. 1998) (citing <u>State Farm Mut. v. Nationwide Mut.</u>, 307 Md. 631, 516 A.2d 586 (Md. 1986); <u>Walsh v. Hibberd</u>, 122 Md. 168, 89 A. 396 (Md. 1913)). The public policy of the state cannot be set aside by an agreement of parties. <u>Marburg v. Merchantile Bldg. Co.</u>, 154 Md. 438, 140 A. 836, 838 (Md. 1928).

Under <u>Finch v. LVNV</u>, judgments obtained by a collection agency that was unlicensed at the time it filed suit are void based on public policy considerations. <u>Finch v. LVNV</u>, 212 Md. App. 748, 761, 71 A.3d 193, 200 (Md. Ct. Spec. App. 2013) ("a complaint filed by an unregistered collection agency is [] a nullity, and any judgment entered on such a complaint is void.") (quoting <u>LVNV Funding, LLC v. Trice</u>, 352 Ill.Dec. 6, 11, 952 N.E.2d 1232, 1237 (Ill. App. 2011)). As the <u>Finch</u> Court reasoned:

17

> [T]he MCALA licensure requirement is intended to eliminate a perceived harm, rather than to "build the public fisc." To be sure, the MCALA imposes penalties for violations of the MCALA – such as engaging in unlicensed collection activities – and the penalty amount is determined based upon factors including "the deleterious effect of the violation on the public and the collection industry. . ." Additionally, the MCALA does not just mandate licensure, but also imposes criminal penalties for collection agencies that engage in collection activities without a license.

Id. at 762-63, 201 (citations omitted).

Parties cannot contract for the performance of an act prohibited by law. See, e.g., Springlake Corp v. Symmarron Ltd. Partnership, 81 Md. App. 694, 569 A.2d 715 (Md. 1990). The Baker Settlement Agreement, even though approved by the U.S. District Court, cannot be interpreted in a manner to change judgments that have become void as a result of Finch into valid and collectible judgments. A contract -- in this case a settlement agreement -- is not enforceable if it authorizes action or conduct that has been determined to be against public policy. As the result of Finch, all of the debt collection complaints filed by Sunshine when it was unlicensed are treated as null and void and any judgments obtained from these complaints are void for the public policy reasons set forth in Finch. Therefore, the Baker Settlement is unenforceable as against public policy to the extent that it is interpreted to permit Defendants a free pass to continue to collect upon judgments that have been made void by Finch.

There is no dispute that collecting on a void judgment is the type of conduct

giving rise to claims under the FDCPA, MCDCA and MCPA. For example, the conduct violates 15 U.S.C. § 1692e(2)(A) in that it constitutes the false representation of the character, amount, or legal status of the alleged debt and MCDCA § 14-202(8) in that it constitutes an attempt to enforce a right with knowledge that the right does not exist. In other words, although the Baker settlement resolved claims for past debt collecting abuses by the Defendants, it did not immunize Defendants from lawsuits like this one which relate to separate illegal debt collecting activities.

The District Court erred by effectively turning the Finch rationale upside-down. The District Court noted that "Finch referred to the voiding of a judgment obtained by an unlicensed collection agency [for public policy reasons] as a 'drastic remedy,'" but then improperly interpreted the Baker release as allowing for the collection of void judgments, suggesting that public policy only justifies voiding an agreement where a "challenged agreement is patently offensive to the public good, that is, where the common sense of the entire community would . . . pronounce it invalid." JA at 117 (quoting Maryland-National Park and Planning Comm'n v. Washington National Arena, 282 Md. 588, 606, 386 A.2d 1216, 1228 (Md. 1978)).

Here, the public policy issue has been fully considered and resolved by the Maryland appellate courts and Finch is controlling on this issue because a state

19

appellate court's decision on a question of state law is binding in federal court. <u>See</u> <u>Roach v. Angelone</u>, 176 F.3d 210, 217 (4th Cir. 1999) ("this Court does not have the power to reexamine a state court's determination of state law."); <u>Wright v. Angelone</u>, 151 F.3d 151, 158 (4th Cir. 1998) ("In fact, even if we were to conclude after an independent review that the state court's holding was incorrect, we are nonetheless bound by it as a final determination of state law by the highest court of the state."). As <u>Finch</u> made clear, collecting on void judgments is "patently offensive to the public good" because the licensing requirement is a public interest statute for the welfare of its citizens that imposes civil and criminal penalties. The <u>Finch</u> Court found:

> [T]he drastic remedy of deeming a judgment void if it was obtained by an unlicensed collection agency is warranted in light of the legislation aimed at preventing such practices. <u>See</u>, <u>e.g.</u>, <u>Hilco</u>, <u>supra</u>, 765 F. Supp. 2d at 728-32 (discussing the long-standing consumer protection statutes in force in Maryland, including the MCDCA and MCPA, as well as the implication of the licensure requirements); MCALA § 7-205(c)(4) (amount of penalty imposed for unlicensed collection activities is determined based upon factors including "the deleterious effect of the violation on the public and the collection industry . . ."); MCALA § 7-401(b) (imposing criminal penalties for parties that engage in unlicensed collection activities). Our conclusion is further supported by <u>Hilco</u>, which held that filing a collection action without the requisite license under MCALA constitutes an "action that cannot legally be taken." <u>Hilco</u>, <u>supra</u>, 765 F. Supp.2d at 728.

<u>Finch</u>, 212 Md. App., 71 A.3d at 761-62, 200-01 (emphasis supplied).

Thus, <u>Finch</u> explicitly found that operating as an unlicensed collection agency was so offensive to the public good that it justified deeming its judgments

void. By the same rationale, the <u>Baker</u> Settlement Agreement offends public policy to the extent that it is deemed to be a contractual arrangement authorizing Defendants to continue collection activities on void judgments. As the result of <u>Finch</u> the judgment entered in favor of Sunshine and against Ms. Jolly is void and, as such, must be held to be unenforceable no matter the effect given to any previous class action settlement.

> **3.    PLAINTIFF HAS ALSO STATED A CLAIM BASED UPON DEFENDANTS' VIOLATION OF THE <u>BAKER</u> SETTLEMENT AGREEMENT.**

The <u>Baker</u> settlement agreement is governed by Maryland law. "A settlement agreement is a contract," and Maryland "adheres to the principle of the objective interpretation of contracts." <u>Corsair Special Situations Fund, L.P. v. Engineered Framing Sys., Inc.</u>, 694 F. Supp. 2d 449, 454-55 (D. Md. 2010). "The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding." <u>Goldberg v. Goldberg</u>, 290 Md. 204, 212, 428 A.2d 469, 474 (Md. 1981) (quoting <u>Slice v. Carozza Prop., Inc.</u>, 215 Md. 357, 368, 137 A.2d 687, 693 (Md. 1958).

The pertinent part of the <u>Baker</u> Settlement Agreement provides:

> If there is an unpaid amount on the Original Debt Balance owed by a Sub-Class II Member on the Effective Date in excess of 10% of the

21

> Original Debt Balance, Defendant Sunshine shall provide each such
> Sub-Class II Member a credit of 10% of the <u>Original Principal</u> on the
> books of Sunshine.

JA 58 at ¶ 27(a). This clause is ambiguous because it does not specify where the credit is to be applied. The District Court held that the credit is to be applied to an "original debt balance" — which was allegedly $6,005.68 in Ms. Jolly's case — even though Defendants only ever sued her for $2,392.99, which was the principal that she allegedly owed (and which was the amount that was used to calculate the 10% credit of $239.30). JA 108. This interpretation lacks merit because the plain meaning of the settlement agreement is that the credit is to be applied to the unpaid amount remaining on the amount sued for and this is the only interpretation consistent with the intent of the settlement agreement to give every Sub-Class II member relief.

The sentence at issue consists of both a dependent and independent clause.[3] The dependent clause is "[i]f there is an unpaid amount on the Original Debt Balance owed by a Sub-Class II Member on the Effective Date in excess of 10% of the Original Debt Balance." JA at 58. This clause defines the scope of subgroup (a). It stipulates that subgroup (a) consists of any class member that has a balance greater than 10 percent of the original debt balance as of the effective date of the

---

[3] <u>See</u>, <u>e.g.</u>, <u>Identifying Independent and Dependent Clauses,</u> PURDUE ONLINE WRITING LAB, http://owl.english.purdue.edu/owl/resource/598/01/ (last visited October 15, 2013).

22

settlement agreement.

The dependent clause then stipulates the type of additional relief for class members who have an outstanding balance greater than 10 percent of their original debt. This clause states that members of this subgroup shall receive "a credit of 10% of the Original Principal on the books of Sunshine." JA at 58. In order to be effective, this 10 percent principal credit must be applied to the class members' outstanding principal balance.

The dependent clause begins with "there is" and "[i]n sentences beginning with there is or there are, the subject follows the verb." Making Subjects and Verbs Agree, PURDUE ONLINE WRITING LAB, http://owl.english.purdue.edu/owl/resource/598/01/ (last visited October 15, 2013). Here, the subject that follows "there" is "unpaid amount." JA at 58 at ¶ 27(a). Since the subject of the dependent clause is "unpaid amount," Sunshine must apply the ten percent credit to the "unpaid amount" -- i.e. the consumer's remaining principal balance as of the Effective Date, which in Ms. Jolly's case was $2,517.00. JA 14 at ¶¶ 34-35.

Thus, Defendants' reading of the settlement agreement is grammatically strained. Defendants contend that the 10 percent credit is to be applied against the "Original Debt Balance." However, "Original Debt Balance" is not the subject of the dependent clause. "Original Debt Balance" is a part of the prepositional phrase "on the Original Debt Balance" which modifies the subject "unpaid amount."

23

Defendants' reading is incorrect because it does not apply the 10 percent credit granted in the independent clause to the subject of the dependent clause (the "unpaid amount"), which in Ms. Jolly's case consisted of predominately unpaid principal.

Moreover, Defendants' interpretation is incorrect when one considers paragraph 27(a) in the context of the entire agreement. The subgroups of Subclass II are designed to give additional relief to "all Class Members who have paid any sum of money or consideration to Sunshine as of the Effective Date." JA 55 at ¶ 6. Defendants' interpretation restricts this relief to only a very few class members because the "original debt balance" is significantly higher than the "original principal" and in those cases, like Ms. Jolly's, where Defendants only sued for the original principal, there is no reduction under the Defendants' interpretation of the clause.

Defendants originally sued Ms. Jolly for just the principal amount of the debt it had purchased ($2,392.99), obviously because it lacked the requisite contractual proof to support a claim for the interest portion of the "original debt balance." The Baker settlement clearly provided Ms. Jolly a credit worth 10 percent of the principal owed. Nonetheless, Defendants now argue that this credit did not reduce the amount that it sued Ms. Jolly for claiming that the 10 percent principal credit is to be applied to the "original debt balance" ($6,005.68) which

24

includes the interest portions of the purchased debts that Defendants never requested in the complaint. Under Defendants' construction, which finds no support in the language of the settlement agreement, the 10 percent credit is worthless because it amounts to a credit against the interest in the "original debt balance" which was not collectible in the first place and which was never sought to be collected by Defendants. Neither Morse's self serving affidavit at JA 95-96 nor the chart of settlement proceeds at JA 97-111 establish that the credit owed under the settlement agreement was to be applied against the "original debt balance." The chart merely shows the calculation of the amount of the credit, but does not include a column showing the resulting amount that was to be owed by the class members after the application of the credit. Additionally, since the credit amount was 10 percent of principal, it obviously was to be applied to the remaining principal balance (which was all that Defendants sued for) at the effective date of the settlement.

All parties agree that Ms. Jolly is a member of this subgroup because her original principal was $2,392.99, which is all the Defendants ever brought suit against her to collect. JA 108. Ten percent of the Original Principle is $239.30. She only paid $600 on this debt. Thus, as of the Effective Date, her balance was "in excess of 10% of the Original Debt Balance." Nevertheless, Sunshine failed to give Ms. Jolly her 10 percent principal credit of $239.30. Instead, on November 6,

2012, Defendants moved that the District Court of Maryland enter judgment in the amount of $2,517.90 pursuant to Ms. Jolly's previous settlement agreement with Defendants. JA 14 at ¶ 34.[4] This figure only accounted for $600 worth of payments ("$3,117.90 - $600"), but failed to include Ms. Jolly's ten percent principal credit of $239.30. Id.

A review of the chart also demonstrates that applying the 10 percent of original debt balance reduction against the original debt balance actually provides no relief to class members because Sunshine never sued for this inflated amount in the first place. Thus, after supporting the first part of its opinion by claiming that "the Settlement Agreement entered into in the class action was between sophisticated parties and was approved by the court," in the second part of its opinion the District Court has interpreted the Settlement Agreement in a manner that provides no relief to class members despite the fact that it was negotiated by sophisticated parties and approved by the court, neither of whom would agree to a settlement that provides no relief to the class.

In failing to provide Ms. Jolly with her 10 percent credit owed under the Baker Settlement Agreement, Defendants violated the FDCPA, MCDCA and MCPA. Specifically, the FDCPA, at 15 U.S.C. § 1692e(2)(A), provides:

---

[4] This agreement provided that a judgment could be entered against Ms. Jolly "in the amount of $3,117.90 plus post-judgment interest at the legal rate, less a credit for any payments made prior to the breach of this agreement."

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
. . .
(2) The false representation of--

(A) the character, <u>amount</u>, or legal status of any debt; . . .

(Emphasis supplied).

With respect to statutory construction, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." <u>Estate of Cowart v. Nicklos Drilling Co.</u>, 505 U.S. 469, 475 (1992). Here, this section of the FDCPA explicitly prohibits a debt collector from falsely stating the amount of the debt, which is what happened here.

The District Court erred by finding – without any citation to legal authority – that "at most this is a contract dispute that does not invoke the statutes upon which Jolly relies." JA 118. However, decisions from around the country indicate that conduct that results in a debt collector falsely stating the amount of the debt violate the FDCPA. <u>See</u>, <u>e.g.</u>, <u>Dowling v. Litton Loan Serv., L.P.</u>, No. 2:05-CV-0098, 2006 WL 3498292, at *6 (S.D. Ohio Dec. 1, 2006) (misstating that consumer was two months behind); <u>Stiff v. Wilshire Credit Corp.</u>, No. CIV05-00462PCTMEA, 2006 WL 141610 (D. Ariz. Jan. 17, 2006); <u>Pacheco v. Joseph McMahon Corp.</u>, No. 3:10CV464 AWT, 2012 WL 774943 (D. Conn. Mar. 7, 2012) (summary

27

judgment entered in favor of consumer based on proof that debt collector sent collection letters adding post-judgment interest in the amount of $0.89 and $1.96 when no post judgment had been awarded by the Court); Sunga v. Broome, 1:09CV1119 JCC, 2010 WL 3198925 (E.D. Va. Aug. 12, 2010) (a collector's alleged multiple misrepresentations of the amount of the debt, including by as little as $1.41 in unlawful interest and by $16.00 in prohibited fees, stated a claim for violating 1692e(2)(A)); Neild v. Wolpoff & Abramson, L.L.P., 453 F. Supp. 2d 918, 924 (E.D. Va. 2006) (averments that the debt collecting law firm falsely represented the amount of the debt state a cause of action for violation of § 1692e(2)(A)).

Here, Ms. Jolly has sued Defendants for filing a pleading in an attempt to collect a consumer debt in the wrong amount, and then serving interrogatories in an attempt to collect the incorrect amount of the consumer debt. These allegations go beyond a simple breach of the Baker settlement agreement. Defendants did more than just fail to credit Ms. Jolly's account. They engaged in additional collection activities in an attempt to collect her consumer debt in an incorrect, inflated amount.

Ms. Jolly was rightfully entitled to a principal credit of $239.30 from Sunshine. When Defendants failed to give her this credit and instead requested an entry of judgment in a greater amount, and subsequently attempted to garnish and

serve interrogatories in aid of execution on this inflated amount, Defendants made false representations of the amount of the debt they alleged was owed by Ms. Jolly and violated § 1692e(2)(A), 1692e(5), 1692e(10), 1692f and 1692f(1).

Similarly, the MCDCA at Md. Code Comm. Law § 14-202(8) provides that Defendants may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Here, Defendants did not have a right to collect the full amount of Ms. Jolly's debt because she was entitled to a 10 percent credit. Since Defendants were parties to the Baker Settlement Agreement, they knew they were required to give her this credit. Nevertheless, by asking for judgment in the amount of $2,517.90 ($3,117.90 - $600 in payments), Defendants knowingly and intentionally attempted to collect an inflated amount when a right to collect this amount did not exist for this amount.

While it is true that the same facts could support a "simple breach of contract action or perhaps [ ] a defense in the consent judgment action," they also support the causes of action actually alleged in the Amended Complaint.

## CONCLUSION

For the reasons stated, Ms. Jolly requests that the Court of Appeals reverse the order of the District Court granting summary judgment in favor of the Defendants and remand the case to the District of Maryland.

29

## **REQUEST FOR ORAL ARGUMENT**

Ms. Jolly requests oral argument because the District Court's rulings involve questions of first impression. The Fourth Circuit has yet to address the implications of a prior settlement agreement on subsequent collection activity on void judgments entered in favor of unlicensed debt collectors. The Fourth Circuit has also not addressed whether breaching a settlement agreement and attempting to collect an inflated amount violates the FDCPA, MCDCA and MCPA.

Respectfully Submitted,


*/s/ E. David Hoskins*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*


*/s/ Max F. Brauer*
Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that:

1. This brief has been prepared with Word, using a proportionally spaced serif typeface, Times New Roman, 14 point font.

2. Exclusive of: table of contents; table of authorities; any addendum containing statutes, rules, or regulations; and the certificate of service this brief contains <u>7,309</u> words.

3. I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line printout.

<div style="margin-left: 40%;">

*/s/ E. David Hoskins*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*

Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21202
*Counsel for Appellant*

</div>

## CERTIFICATE OF FILING AND SERVICE

On the 12th day of June, 2014, I filed the required copies of the foregoing OPENING BRIEF OF APPELLANT with the Clerk of Court via hand delivery and electronically using the CM/ECF system, which will send a notice of electronic filing to:

Ronald S. Canter
LAW OFFICES OF RONALD S. CANTER, LLC
200A Monroe Street, Suite 104
Rockville, MD 20850
rcanter@roncanterllc.com

*Counsel for Appellee*
*Sunshine Financial Group, LLC*

James E. Dickerman
Melissa E. Goldmeier
ECCLESTON & WOLF, PC
Baltimore Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076
dickerman@ewmd.com
goldmeier@ewmd.com

*Counsel for Appellee*
*Law Office of J. Scott Morse, LLC*

*/s/ E. David Hoskins*
E. David Hoskins
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21204

Max F. Brauer
The Law Offices of E. David Hoskins, LLC
16 E. Lombard Street, Suite 400
Baltimore, Maryland 21204
*Counsel for Appellant*

32

## ADDENDUM

### 15 U.S.C. § 1692e False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of--

    (A) the character, amount, or legal status of any debt; or

    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--

    (A) lose any claim or defense to payment of the debt; or

    (B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime

33

or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

## <u>15 U.S.C. § 1692f</u>. Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt

to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

    (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

    (B) there is no present intention to take possession of the property; or

    (C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

**Md. Code, Business Regulation, § 7-205. Enforcement**

\*      \*      \*

(c) In determining the amount of any penalty to be imposed under subsection (b) of this section, the Board shall consider:

    \*      \*      \*

    (4) the deleterious effect of the violation on the public and the collection industry; . . .

**Md. Code, Business Regulation, § 7-401. Prohibited acts**

\*      \*      \*

(b) A person who violates this section is guilty of a misdemeanor, and on conviction, is subject to a fine not exceeding $1,000 or imprisonment not exceeding 6 months or both.

**Md. Code, Commercial Law, § 13-101**

Unfair or deceptive trade practices include any:

(1)     False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;

(14)    Violation of a provision of:

    (iii) Title 14, Subtitle 2 of this article, the Maryland Consumer Debt Collection Act;

**Md. Code, Commercial Law, § 14-201**

a)      In this subtitle the following words have the meanings indicated
.
(b)     "Collector"means a person collecting or attempting to collect an alleged debt

36

arising out of a consumer transaction.

(c)     "Consumer transaction" means any transaction involving a person seeking or acquiring real or personal property, services, money, or credit for personal, family, or household purposes.

(d)     "Person" includes an individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity.

## Md. Code, Commercial Law, § 14-202

In collecting or attempting to collect an alleged debt a collector may not:

(8)     Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; or